*In re* CONSERVATORSHIP OF ROSE A. BROWNE, Incompetent.— (STEWART R. WINSTEIN, Public Conservator for the County of Rock Island, Petitioner-Appellant, *v.* BESTOR F. WITTER, Conservator of the Person and Estate of Rose A. Browne, Respondent-Appellee.)

Third District   No. 76-303

Opinion filed November 23, 1977.

BARRY, J., specially concurring.

Dorothea O'Dean, of Rock Island, for appellant.

Peter Fieweger, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Petitioner-appellant, Stewart F. Winstein, public conservator for Rock Island County, appeals from the judgment of the circuit court of Rock

Island County appointing respondent-appellee, Bestor F. Witter, as conservator for the person and the estate of Rose A. Browne.

This matter was previously before this court in *In re Conservatorship of Browne*, 35 Ill. App. 3d 962, 343 N.E.2d 61. We held there that insufficient evidence had been introduced at trial to prove Rose A. Browne incompetent. The judgment was reversed and remanded with directions to the trial court to enter an order vacating the order which adjudicated Rose A. Browne incompetent and appointed Bestor F. Witter as the conservator of her person and estate. All parties were allowed to file new petitions.

Following our decision in *Browne I*, on March 29, 1976, respondent-appellee Bestor F. Witter filed a petition praying he be appointed conservator of the person and the estate of Rose A. Browne. He stated he was Rose Browne's attorney and alleged she was incapable of handling herself or her business affairs. The petition listed three persons as Rose Browne's closest blood relatives: Jessie L. Miller, sister, of Hannibal, Missouri; Mary Elizabeth Crawford, niece, of Girard, Illinois; and Donna M. Campbell, niece, of Platt City, Missouri. On March 31, 1976, petitioner-appellant filed a similar petition praying he be appointed conservator of the person and the estate of Rose A. Browne. Summons was served on Rose A. Browne and a guardian ad litem was appointed to represent her throughout the proceeding. Notice of hearing scheduled for April 6, 1976, was sent to all the parties and the three relatives.

At the hearing, the testimony of Dr. Theodore Grevas was introduced. All the parties stipulated that he was a competent physician and competent to express an opinion on Rose Browne's physical and mental condition. Dr. Grevas testified that he first became acquainted with Browne in 1960. On June 30, 1974, Browne was in an accident and Dr. Grevas treated the injuries she received as a result of that accident. These injuries were in part responsible for the subsequent deterioration in Rose Browne's physical and mental capabilities. It was Dr. Grevas's opinion that as a result of head injuries Browne sustained in the accident, she was incapable of handling herself or her business affairs. Testimony of other witnesses indicated that Browne was in a completely disoriented state.

Bestor F. Witter testified that he had known Rose Browne 12 or 15 years. Browne cleaned Witter's offices and they became well acquainted. Witter drafted two or three wills for Browne and did some tax work for her. Witter considered her one of his clients. After the accident on June 30, Witter visited Browne at the hospital and she requested Witter "to take care of things." As a result Witter prepared a power of attorney which he explained to Browne on August 4, 1974, and which she signed on the same day. No question was raised at trial as to Browne's competency on the day the power of attorney was signed. Witter is not related to Rose Browne.

Jessie Miller and Donna Campbell both testified that they preferred that appellee be appointed conservator. Both witnesses confirmed much of Witter's testimony concerning the relationship between Witter and Browne. Browne's other niece, Mary E. Crawford, in a letter directed to the "Probate Clerk" notified the court that her preference for conservator was Witter. There are no questions as to the adjudication of incompetency or the sufficiency of evidence of incompetency. The parties sole dispute on appeal relates to who should be appointed conservator. There is no question but that both guardians are well qualified and have no interests adverse to those of Rose Browne.

Petitioner-appellant presents several reasons why he, the public conservator, should be appointed conservator. He submits that the list of statutory preferences for awarding letters of administration that is set forth in section 9—3 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 9—3, effective January 1, 1976) is controlling and relies on *Rathbun v. Rimmerman*, 6 Ill. App. 2d 101, 126 N.E.2d 856, to support his position. However, based on isolated language from *In re Estate of Lamont*, 13 Ill. App. 3d 714, 300 N.E.2d 574, petitioner-appellant argues that persons who come under any of the categories in section 9—3, but who are nonresidents, are not entitled to a preference in nominating a resident conservator. Since Witter is a stranger, he falls below the public conservator in the hierarchy of section 9—3, and his appointment as conservator is therefore contrary to law. Respondent-appellee Witter contends that the appointment of conservators is governed exclusively by provisions of section 11—3 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 11—3, effective January 1, 1976) which does not establish any preferences for such appointments and the first of the preferences for letters of administration set forth in section 9—3 should not be judically read into section 11—3. For reasons that will become evident, we hold that the rigid statutory preferences established by section 9—3 do not apply to appointment of conservators.

■■ It should appear evident that the responsibilities of a conservator differ greatly from those of an administrator. The paramount concern in the selection of a conservator is the best interest and well-being of the incompetent. (See Annot., 65 A.L.R.3d 991 (1975).) The differences between administratorship and conservatorship prescribe a rule which avoids any artificial method of determining who is to be conservator and which allows the choice of a conservator based upon the best interest of the incompetent. By rejecting the application of section 9—3 to the appointment of conservators, we do not imply that relatives have no voice in selecting a conservator. The recommendations of persons with kinship or familial ties are to be considered by the court when selecting a conservator, but only because it is presumed that such persons are likely

to be more solicitous of the incompetent's welfare than would someone else. If evidence establishes that the relative seeking a preference had theretofore been relatively unconcerned with the incompetent, their recommendations should be accorded much less weight than a relative who had maintained close personal ties with the incompetent.

■■ While the preference of relatives is important, there are other factors to be considered. One such factor is the relationship between the proposed conservator and the incompetent. A court should give serious consideration to any conduct by the incompetent prior to being adjudicated incompetent which manifests trust or confidence in the proposed conservator. Prior actions by the proposed conservator which indicate a concern for the well-being of the incompetent should also be considered. Other factors to be considered which are not in issue here include the ability of the conservator to manage the incompetent's estate and the extent to which the proposed conservator is committed to discharging responsibilities which might conflict with his duties as a conservator.

■■ The trial court in its written order found that it was in the best interest of the incompetent to appoint Bestor F. Witter as conservator for the following reasons: one, he is the preference of the relatives; two, he was the attorney of the incompetent before she became incompetent; three, Rose Browne trusted Witter because she had retained him as her attorney and had executed a power of attorney in his favor while she was still competent, all of which manifested her trust and confidence in Bestor Witter. Each of the reasons advanced by the trial court for appointing Witter was properly considered and support the trial court's decision.

To a certain extent both parties have relied on the opinions in *Rathbun v. Rimmerman*, 6 Ill. App. 2d 101, 126 N.E.2d 856, and *In re Estate of Lamont*, 13 Ill. App. 3d 714, 300 N.E.2d 574, to support their respective positions. We have examined these opinions in detail and while they are conflicting in certain minimal aspects, there is a common thread of reasoning woven through both these cases and which controls the appointment of any conservator. That thread and the controlling factor in appointing a conservator is what is in the best interest of the incompetent. In *Rathbun*, a first cousin who was preferred by all relatives was appointed conservator as opposed to a public administrator. No evidence was presented to rebut the presumption that as a relative, he would be more solicitous of the incompetent's well being than would a total stranger. In *Lamont*, the court was required to balance the preferences of relatives separated from the incompetent by time and distance against obvious manifestations of trust and confidence by the incompetent in a niece by marriage. We think the court in *Lamont* was correct in affirming the appointment of the niece as conservator over the preference of

relatives. When these decisions are interpreted in light of the best interest of the incompetent, it is clear that neither advocate conflicting rules.

For the foregoing reasons the judgment of the circuit court of Rock Island County is affirmed.

Judgment affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE BARRY, specially concurring:

Although I agree with the result reached by the majority, I believe the majority's reasoning supporting that result is incorrect. As a matter of public policy, the preference given to relatives in obtaining and nominating other persons for letters of administration should also apply to obtaining or nominating for the letters of conservatorship. (See *Rathbun v. Rimmerman* (2d Dist. 1955), 6 Ill. App. 2d 101, 126 N.E.2d 856.) Therefore, I believe, the order of preference set out at section 9—3 of the Probate Act of 1975 (Ill. Rev. Stat. 1975, ch. 3, par. 9—3) should govern the appointment of a conservator.

Applying that statute to the facts of this case, the result would be the same as that reached by the majority. The petitioner contends, however, that relatives who are not residents of Illinois are not entitled to a preference in nominating a resident conservator. For this proposition, the petitioner cites *In re Estate of Lamont* (5th Dist. 1973), 13 Ill. App. 3d 714, 300 N.E.2d 574. The *Lamont* case concludes that, although a non-Illinois resident may be appointed as conservator, a nonresident's nominee has no preference in appointment. The conclusion in *Lamont* is illogical and should not be followed. In the appointment of an administrator, although a non-Illinois resident cannot obtain letters of administration, the nomination by a nonresident retains its original priority. (Ill. Rev. Stat. 1975, ch. 3, par. 9—3.) As a result, applying this reasoning in place of the majority's, I would also find that the trial court did not err because the nominee of the nonresident relatives in this case had a higher preference than did the public conservator.

Additionally, I believe the use of the preference statute in the appointment of conservators, rather than considering the "best interest of the incompetent," provides the circuit court judges of this State a better template for the determination of to whom letters of conservatorship ought to be awarded. Although I do not suggest that the best interest of the incompetent should be ignored, I believe it is advantageous to the courts and the parties that there be more certainty in the law rather than relying on a case-by-case, judge-by-judge exercise of discretion. The exercise of discretion is more susceptible to further dispute. More importantly, the statutory preferences predict the relatives will consider

the best interest of the incompetent. I suggest a process by which a person is appointed conservator in accordance with the preferences of the preferred petitioner after the trial court has considered whether the nominee or the petitioner has an interest which conflicts with the interest of the incompetent.